423 So.2d 1246 (1982)
Ervin J. ARNOUVILLE, Jr.
v.
JOINER ENTERPRISES, INC., d/b/a Liberty Waste Carriers, et al.
No. 5-153.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1982.
Rehearing Denied January 17, 1983.
*1247 Ronald J. Landry, LaPlace, Bernard J. Rice, III, Gretna, for plaintiff-appellant.
H.D. McNamara, Jr., Hailey, McNamara, McNamara & Hall, Metairie, for defendants-appellees.
Before SAMUEL, KLIEBERT and GRISBAUM, JJ.
KLIEBERT, Judge.
This is a devolutive appeal brought by Ervin Arnouville, Jr., plaintiff, from a judgment dismissing his claim in tort for damages against Joiner Enterprises, Inc., d/b/a Liberty Waste Carriers, Michael P. Morris and U.S. Fire Insurance Company, defendants.
*1248 After a trial on the merits, the jury concluded Michael Morris (hereafter Morris), the operator of the truck owned by his employer, Joiner Enterprises, Inc., was not negligent. The defendants did not appeal nor did they answer plaintiff's appeal. The plaintiff asserts three assignments of error by the trial court: 1) Permitting defendants' fact witness to testify out of turn over objections of the plaintiff causing confusion in the jury's mind, 2) The trial judge's refusal to give certain jury charges proposed by the plaintiff relative to the negligence of a left-turning vehicle and proposed jury charges relative to the obstruction of highways and contributory negligence, and 3) The verdict of the jury was contrary to the law and the evidence. We cannot say the trial judge abused his discretion or that the jury was clearly wrong, hence, we affirm the trial court.
At approximately 1:30 A.M. on March 12, 1978, Morris was operating a 1977 Kenworth truck on Interstate 10 in the inbound lanes (towards New Orleans) near the exit from the Interstate to Veterans Boulevard. The exit ramp makes a semicircle from the inbound lanes of the Interstate into the inbound traffic lanes of Veterans Boulevard. At the point where the exit ramp meets the inbound traffic lanes of Veterans Boulevard, there is a stop sign. Veterans Boulevard has three inbound traffic lanes and three outbound traffic lanes separated by a median seven or eight feet in width. Interstate 10 passes over Veterans Boulevard two to three hundred yards towards New Orleans from the stop sign at the intersection of the I-10 exit ramp and the inbound traffic lanes on Veterans Boulevard. There is a slight curve in the inbound traffic lanes extending towards Kenner from the stop sign.
According to the undisputed testimony of Morris, when he reached the stop sign at the intersection, he came to a complete stop and checked the flow of traffic in the inbound and outbound lanes of Veterans. When he believed the way was clear in the inbound lanes and outbound lanes, he proceeded across the inbound lanes with the intention of crossing the median and making a left turn (towards Kenner) in the outbound traffic lanes of Veterans Boulevard. When the cab of the truck entered the median, he noticed traffic flowing in the outbound traffic lanes; hence, he came to a complete stop to allow the traffic in the outbound lanes to clear before executing the left turn on Veterans. He stopped his truck with the bulk of the cab being in the median and the remainder of the truck extending into and blocking two inbound traffic lanes (those closest to the neutral ground) of the three inbound traffic lanes of Veterans.
The plaintiff testified he entered the traffic lanes of Veterans Boulevard with his 1977 Ford pickup truck from Downs Boulevard (about one thousand feet towards Kenner from the stop sign at the intersection of the Interstate exit ramp and Veterans Boulevard). He proceeded inbound in the middle traffic lane. When he was confronted by the Kenworth truck obstructing his lane of traffic, he placed both hands on the steering wheel, turned hard right, and applied his brakes. He remembers nothing else.
When the collision occurred, two police detectives, Sergeant Bond and Sergeant Hidding, with officer Hidding driving, were riding in the inbound traffic lanes of Veterans Boulevard. Although engaged in casual conversation, both officers testified they noted the defendant's truck stopped on Veterans Boulevard from the time they came under the interstate at which point they were two to three hundred yards from the truck. Although neither officer saw the collision, they heard the impact and saw flying debris from the impact. The officers testified that after hearing the collision they turned their vehicle around at Downs Boulevard and reached the plaintiff's vehicle within moments of the impact. According to both officers, when they opened the door to plaintiff's pickup truck, they smelled alcohol. One of the doctors who treated the plaintiff testified, however, that a test of plaintiff's urine and blood, drawn at the East Jefferson Hospital approximately one and one-half hours after the *1249 collision, showed zero alcohol in the blood and urine. The testimony of Sgt. Bond was submitted on plaintiff's behalf, while the testimony of Officer Hidding was submitted out of turn by the defendants.
The 1977 Kenworth truck was a double tandem flatbed with a dumpster (a square container extending the entire length and width of the flatbed with a height protruding above the cab of the truck) mounted on the flatbed. The overall length of the truck was estimated at thirty-two feet. It was eight feet high. The only lights on the side of the truck facing the plaintiff was the one located on the extreme rear and one on the left front fender. Although there is some dispute as to the density and clarity of the light and/or the visibility of the truck for the traffic approaching from the plaintiff's direction, there is substantial evidence showing the area where the accident occurred was illuminated by street lights and the defendant's truck could be seen by traffic flowing in either direction on Veterans Boulevard.
We will consider the plaintiff's first assignment of error, i.e., the asserted error due to the trial judge's granting of permission to the defendants to submit the testimony of Sgt. Hidding out of turn. As stated by the plaintiff, the classical order or precedence in the trial court is the presentation of evidence by the plaintiff, followed by the presentation of evidence by the defendant, with the plaintiff then having an opportunity to submit rebuttal evidence. Under the authority of La.C.C.P. Article 1632, however, the classical order of presentation may be varied by the trial court "when circumstances so justify". Here, the trial judge allowed Sergeant Hidding to testify because he was on detail and would be unavailable to testify the next day. The portion of his testimony which plaintiff asserts severely prejudiced his case was the testimony relative to the smell of alcohol in the plaintiff's truck. We note, however, that Sergeant Bond, whose testimony was submitted by the plaintiff and, according to plaintiff was scheduled to testify before Sergeant Hidding, also testified that he smelled alcohol when the door of the plaintiff's vehicle was opened. Further, we note that plaintiff interrupted the natural order of the trial by submitting the testimony of Dr. John Garoutte and interrupted the testimony of Sergeant Bond to introduce the testimony of Dr. Jackson. The latter testimony brought out the fact that the test of the blood and urine were negative for alcohol and was presented immediately after Officer Hidding's testimony. Therefore, even if we considered the out of turn testimony as being prejudicial to plaintiff, we would have to conclude the jury would have the same evidence available through Sgt. Bond at the same time. Further, presenting all of the testimony as to the smell of alcohol and of the blood and urine test results together served to help rather than confuse the jury. We cannot say, therefore, that the trial judge abused his discretion in allowing Sgt. Hidding to testify out of turn or that this was prejudicial to plaintiff's case.
Plaintiff next contends that the trial judge erred in disallowing jury charges proposed by the plaintiff. The rejected charges can be grouped into three separate categories: 1) The burden of care imposed on a left-turning motorist, 2) The duty imposed on an approaching motorist whose path is blocked by an unlighted truck, and 3) Per se negligence, contributory negligence and last clear chance. The jurisprudence cited by the plaintiff in support of the proposed charges on the duty of a left turning motorist concerns the duty of a motorist attempting a left turn from a public highway to an overtaking or oncoming motorist. In lieu of those proposed by the plaintiff, the trial judge's instructions in this area consisted of the following:
"A left turning motorist has a strong duty to make sure that this maneuver can be made with safety. A driver turning across a highway must give a proper signal and make sufficient observation to insure that the turn can be made safely."
Counsel for plaintiff argues the trial court erred most drastically when it failed to use the special charges proposed by plaintiff *1250 dealing with the per se negligence of the defendant Morris for violation of a specific safety statute. The statutes asserted as having been violated by Morris are L.S. A.-R.S. 32:141(C) and L.S.A.-R.S. 32:301 relative to the duty of placing signal lights on motor vehicles left parked on the highway at nighttime and L.S.A.-R.S. 32:308(A)(3) relative to lights required to be maintained on the side of the truck.
In a jury trial, the judge is not required to give the precise instructions submitted by either party but must give instructions which properly reflect the law applicable in light of the facts of the particular case. Beck v. Lovell, 361 So.2d 245 (La.App., 1st Cir.1978), writ denied 362 So.2d 802 (La.1978). The Judge has a duty to charge the jury as to the law applicable in a case and the correlative right and responsibility to require that the jury get only the correct law; it is the Judge's responsibility to reduce the possibility of confusing the jury and he may exercise the right to decide what law is applicable to prevent counsel from arguing law which the trial judge deems inappropriate. Lauro v. Traveler's Insurance Company, 261 So.2d 261 (La.App., 4th Cir.1972), writ denied 262 La. 188, 262 So.2d 787 (1972).
In view of the facts involved in this case, we cannot say the trial judge abused his discretion in refusing to give the special charges proposed by the plaintiff. The duty of care imposed on a left-turning vehicle in the cases cited by plaintiff in support of his proposed charges is not applicable here because this duty is owed toward overtaking and oncoming traffic. The trial court properly instructed the jury as to the defendant's duty owed to this plaintiff. Also, there are no facts in the record from which the jury could have concluded the doctrine of last clear chance would have been applicable to absolve plaintiff of negligence. Consequently, the failure to charge the jury with the doctrine of last clear chance was not error. Since the defendant's vehicle was in the process of crossing the inbound traffic lanes to enter the outbound traffic lanes of Veterans Boulevard and not parked on the highway, the provisions of LSA R.S. 32:141(C) and LSA R.S. 32:301 are not applicable to the facts present here. Therefore, we cannot conclude the trial judge erred in failing to accept plaintiff's special charge.
The plaintiff argues there was a violation of LSA R.S. 32:308 A(3) because there were no lights in the middle of the truck or on the dumpster located on the flatbed. The statute does not require lights in the center. It requires "two side marker lamps and two reflectors, one of each at or near the rear or near the front of the vehicles". The pictures of the defendant's truck submitted in evidence shows one light located in the front and one located in the rear. LSA R.S. 32:311.1 referred to by the defendant permits combining a reflective device with a lamp to meet the requirements of a reflector and a lamp. The defendant contends an examination of the pictures of the truck submitted in evidence shows the rear light mounted on the frame of the truck was a lamp reflector combination and the one mounted on the left front fender was a directional signal lamp with a side reflector lens. We cannot determine from the pictures whether the defendant's contentions are accurate or inaccurate, but in the light of LSA R.S. 32:308 A(3), we cannot say the trial judge erred in refusing to charge the jury with plaintiff's proposed special charge of "negligence per se" based on a violation of LSA R.S. 308 A(3).
The plaintiff also contends the jury's verdict was contrary to the facts and evidence. Although it is possible to conclude from the record that there was sufficient evidence to find the defendant Morris negligent, there is also sufficient evidence from which the jury could conclude Morris was not negligent. As a reviewing court, however, we cannot merely impose our views for those of the trier of the facts unless that conclusion was clearly wrong. After a careful review of the evidence submitted in this record, we cannot say the jury was clearly wrong. Morris' movement across the inbound traffic lanes of Veterans Boulevard were not in violation of the traffic *1251 rules. He explained that he stopped his vehicle at the point that he did because of oncoming traffic which he could not see from his vantage point at the stop sign. This evidence was totally unrefuted. Accepting that evidence, the trier of the facts could reasonably conclude Morris was not guilty of any negligence for the way in which he proceeded through the intersection or for stopping to let the traffic flow. On the other hand, there is ample evidence from which to conclude the plaintiff should have seen the truck because the intersection was lighted and the failure to see what he should have seen, combined with an excessive speed, was the actual cause of the collision.
Accordingly, the judgment of the lower court is affirmed. All costs of the appeal to be borne by the appellant.
AFFIRMED.