646 So.2d 481 (1994)
Samuel Paul GIRVAN
v.
NEW ORLEANS PUBLIC SERVICE INC.
No. 94-CA-0681.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1994.
Writ Denied March 10, 1995.
*482 Caleb H. Didriksen, Denise A. Bostick, Didriksen & Carbo, New Orleans, for defendant/appellant.
David W. Bernberg, Jacobs, Manuel & Kain, New Orleans, for plaintiff/appellee.
Before WARD, JONES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Samuel Paul Girvan brought suit against New Orleans Public Service, Inc. (NOPSI) for damages allegedly sustained when he fell into an uncovered manhole, breaking his leg. Following trial in the Civil District Court for the Parish of Orleans, a jury found NOPSI's uncovered manhole was an unreasonably dangerous condition, found NOPSI to have been negligent and strictly liable for Girvan's injury to the extent of 70%, and found Girvan *483 to have been free of fault. The jury found the injury was caused by an unknown third party to the extent of 30%. The jury awarded Girvan medical expenses of $2200, lost wages of $1200 and general damages of $35,000. The verdict was made the judgment of the court. From that judgment, NOPSI appeals. Finding no reversible error, we affirm the judgment based on the jury's verdict.

STATEMENT OF FACTS
The accident occurred just before 2:00 a.m. on Sunday, 6 October 1991, when Girvan was walking down Chartres Street returning to his French Quarter home from the Contemporary Arts Center's Art for Art's Sake festival. He had consumed two or three glasses of wine, and no drugs. As he was walking down Chartres Street, he noticed a group of people standing on the sidewalk, walked through the group, and while distracted by the people and not looking at the sidewalk, fell into an uncovered NOPSI manhole.
Girvan was taken to Charity Hospital, where Dr. Richard Meyer diagnosed a broken tibia and fibula, and placed his leg in a splint. Girvan was transferred and admitted to Tulane Medical Center. The Charity and Tulane records are devoid of any mention of alcohol consumption. Dr. Meyer testified that had Girvan shown signs of intoxication, the emergency medical personnel would have drawn a blood sample. Girvan wore a plaster cast for two weeks, whereupon the cast was replaced with a fiberglass cast. Dr. Meyer last saw Girvan on 29 January 1992, and found Girvan's pain was reduced, his leg was able to bear his full weight, and the cast was removed. Because of some residual angulation of the bone caused by imperfect alignment of the fractures, Girvan has a bump on his leg, and is unable to engage in activities he had enjoyed prior to the accident, such as running and playing "friendly" games of soccer.
Employees of the Soniat House, a hotel adjacent to the site of the accident, testified that the manhole cover was in place as late as 10:50 p.m. on Saturday. NOPSI employees testified that manhole covers such as the one that would normally have covered this manhole weigh between 275 and 300 pounds, and cannot be removed without use of a crowbar; specifically, a screwdriver is insufficient to lift such a cover. NOPSI's witnesses testified that their personnel work in the ten to fifteen thousand manholes in New Orleans on a daily basis, and are instructed to replace the cover as soon as their work in the hole is completed. There was no evidence introduced of NOPSI work at the accident location on the evening of Girvan's injury. NOPSI's employees admitted that the covers in part of the Central Business District of New Orleans had been welded in place in preparation for an automobile race, and that the welds were broken in order to gain access to the manholes.

INSTRUCTIONS TO THE JURY
NOPSI contends that the trial court's instructions to the jury were erroneous and require reversal of the judgment in the following respects:
1. The trial court instructed the jury that absolute liability was imposed on NOPSI.
2. The trial court failed to instruct the jury that the fault of a third person is a defense to strict liability.
3. The trial court failed to instruct the jury that the reasonableness of the risk is determined by balancing the utility of the thing with the probability and magnitude of the risk.
The scope and standard of appellate review of instructions to juries are clearly established in Louisiana's jurisprudence.
"In making his charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but rather, has a duty to charge the jury as to the law applicable to a case and, to accomplish this, has the responsibility to reduce the possibility of confusing the jury. Arnouville v. Joiner Enterprises, 423 So.2d 1246 (La.App., 5th Cir.1982). Further, as was stated by the Fourth Circuit in Brown v. White, 405 So.2d 555 (La.App. 4th Cir. 1981), appellate courts must exercise great restraint before overturning a jury verdict on the suggestion the instructions were so erroneous as to be prejudicial. The pertinent question involved in making the decision as to error is whether the jury was *484 misled to such an extent as to prevent it from doing justice." Cuccia v. Cabrejo, 429 So.2d 232, 235 (La.App. 5th Cir.1983), writ denied, 434 So.2d 1097 (La.1983).
The trial judge is required to give instructions that are correct statements of applicable law "in light of the pleadings and facts in each case." Daigle v. Legendre, 619 So.2d 836, 839 (La.App. 1st Cir.1993), writ denied, 625 So.2d 1040 (La.1993); see also, Kennedy v. St. Charles General Hospital Auxiliary, 630 So.2d 888 (La.App. 4th Cir.1993), writ denied, 634 So.2d 863 (La.1994).
"The mere discovery of an error in the trial judge's instructions does not, of itself, justify an appellate court conducting the equivalent of a trial de novo, without first measuring the gravity and degree of the error, and considering the instructions as a whole and the circumstances of the case.... In reviewing the record, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and facts." Barnett v. New Orleans Public Service Inc., 489 So.2d 452, 455 (La.App. 4th Cir.1986).
As a reviewing court, we are further guided by the principle that the trial judge is not in error when he refuses to give a requested charge where such charge is included in his general charge. Id. Applying this standard to the instant case, we find no reversible error in the trial court's instructions.

Appellant's Claim that the Instructions Required a Finding of NOPSI's "Absolute Liability"
The trial court gave a full and correct charge on negligence under LSA-C.C.art. 2315, and on strict liability under LSA-C.C.art. 2317. The trial court made no reference to "absolute liability" as suggested by NOPSI's first specification of error. In its negligence charge, the trial court directed the jury to apply the "ordinary care and prudence under the circumstances" standard of reasonable conduct, considering "at least three factors: likelihood of the harm; gravity of the harm; and ease of prevention." The instructions defined each of these factors, and went on to define strict liability arising out of ownership of a defective thing. The instructions do not imply or suggest that absolute liability should be imposed on NOPSI. In the jury charge, before the jury retired, the trial judge discussed each of the jury interrogatories, and told the jury with respect particularly to Interrogatory # 8:
"If you get to question 8, and I don't know if you're going to get that far, but if you do, it calls upon you to state the percentages of fault for each of the following and it has NOPSI, the plaintiff, and unknown third party. It should be unknown thirty [sic] parties, in the plural. I don't care what numbers you put there, it doesn't make any difference to me what numbers you put, but they've got to total one hundred,..."
The jury returned, and asked the trial judge to "explain again how the percentages work." The trial court replied, "What you need to do is apportion fault among the three entities that I have listed there. If you decided there is any fault other than with NOPSI the total of those three numbers has been one hundred."
Based on the foregoing, and viewing the instructions concerning causation, negligence and strict liability as a whole, we do not find that the jury was misled to find NOPSI absolutely liable. The jury could, and did, apportion liability between the two parties it found responsible for Girvan's injury.

Appellant's Claim that Instruction Concerning Third Party Liability as a Defense to Strict Liability was Incorrect
NOPSI's contention that the jury was not properly charged concerning third party liability is likewise without merit.
In Loescher v. Parr, 324 So.2d 441, 445 (La.1975), the Louisiana Supreme Court held that a strictly liable defendant's fault may be absolved "only if the thing owned by him fails, not because of its defect, but rather because of the fault of some third person...."
The Louisiana Supreme Court defined the fault of a third person which exonerates a premises owner from his own strict liability *485 obligation as "that which is the sole cause of the damage." See, Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979).
The trial court explained to the jury that it should assign on the verdict form the percentage by which the fault of an unknown third party may have contributed to Girvan's injuries and, in fact, the jury found substantial (30%) third party fault, reducing plaintiff's recovery thereby. The jury's verdict demonstrates that it absolved NOPSI from that portion of responsibility for the accident which the jury attributed to the action of the unknown third party who removed the manhole cover. Implicit in this verdict is the finding that the injury was caused partly by the cover's defect and partly by the action of the third party, and not solely by the third party.

Appellant's Claim that the Instruction Concerning Risk/Utility Assessment was Incorrect
NOPSI's third specification of instructional error does not require reversal of the jury's verdict. In its charge concerning assessment of the parties' conduct, the trial court outlined various factors influencing the degree of fault assigned, including, inter alia, measurement of how great was the risk created by NOPSI's conduct and the significance of what was sought by that conduct. While the charge to the jury was not in the exact words of NOPSI's requested charge based on Entrevia v. Hood, 427 So.2d 1146 (La.1983), the instructions, when read as a whole, constitute an accurate statement of the Louisiana law of negligence and strict liability, and satisfy the jurisprudential standard of review.

THE JURY'S VERDICT IS NOT MANIFESTLY ERRONEOUS
The jury's verdict on special interrogatories found that at the time of the accident, NOPSI's open manhole constituted a defective thing within the meaning of LSA-C.C.art. 2317; further, NOPSI was found to have been negligent under LSA-C.C.art. 2315.
Our review of the record in its entirety convinces us that the jury's findings are reasonable in light of that record. We are mindful of the standard of review of the verdict of a properly instructed jury.
"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... [A]ppellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... [Where] a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
We are instructed that before a fact-finder's verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts[1], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 639 So.2d 216, 221 (La.1994).
The record amply supports the jury's verdict. The jury could have determined on the testimony adduced at trial that between 10:50 p.m. on Saturday and 2:00 a.m. Sunday, NOPSI's personnel knew or should have known of the removal of the manhole cover, whether by means of establishment of procedures *486 therefor or otherwise. Based on the record in this case, the jury could have concluded that NOPSI should weld its manhole covers in well-traveled neighborhoods and in areas where they are susceptible of theft. In finding NOPSI negligent under the circumstances, the jury determined that in the conduct of their operations with respect to this particular manhole cover at this location and at the time of the accident, NOPSI fell below the standard of reasonable conduct. We will not disturb the jury's factual decision and the credibility determinations that underlie it. We find the jury's verdict to be reasonable upon our review of the entire record.

THE DAMAGES AWARDED BY THE JURY WERE NOT EXCESSIVE
NOPSI contends that the trial court erred in awarding excessive damages. Its brief does not address the jury's award of $2200 in medical expenses and of $1200 for lost wages, and we find these awards supported by the record. NOPSI attacks the jury's award of $35,000 in general damages as excessive.
As an intermediate appellate court, our scope of review of general damage awards has been outlined by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), certiorari denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Allowing the jury its "great, even vast" discretion, we find no reversible error in an award of $35,000 to an active man in his mid-30s who suffered a broken leg, required approximately six months of treatment, and has permanent impairment of his leg caused by misalignment of the bones during the healing process. The jury accepted his testimony concerning the curtailment of his activities, jogging and playing friendly games of soccer, in reaching its verdict, and we will not disturb that determination.

CONCLUSION
Having found NOPSI's assignments of error to be without merit, we affirm the trial court's judgment, based on the jury's verdict, in favor of Samuel Paul Girvan and against NOPSI in the amount of $26,880.
AFFIRMED.
NOTES
[1] See, LSA-Const. Art. 5, section 10(B).