JjKLEES, Judge.
Plaintiffs, Stephen and Judy Thorne, brought this medical malpractice action against The Administrators of the Tulane Educational Fund, d/b/a Tulane Medical Center Hospital and Clinic (hereinafter “Tulane”), pursuant to the provisions of the Louisiana Medical Malpractice Act, La. R.S. 40.1299.41, et seq. Prior to trial, the trial court granted defendant’s exception of no cause and/or right of action as to one of the claims asserted in the petition. Following a jury trial in which the jury found no breach of the applicable standard of care, the trial court entered judgment dismissing the remainder of plaintiffs’ claims. It is from these judgments that plaintiffs now appeal. We affirm.

FACTS AND PROCEDURAL HISTORY

Stephen Thorne was born with hemophilia, a rare bleeding disorder that is caused by the insufficiency of a blood protein known as Factor VIII. Absence of this clotting factor results in episodes of abnormal bleeding. Stephen Thorne requires blood products containing Factor VIII in order to stop these abnormal bleeding episodes. Such bleeding episodes in a hemophiliac may result in the ^destruction of the surface of the patient’s joints, producing arthritic conditions and sometimes requiring joint replacement.
The record in this case indicates that Stephen Thorne was first seen at Tulane Medical Center in 1988 for difficulty in his joints, particularly in his right knee. He returned in 1992 and was seen by Dr. Ollie Edmunds, an orthopedist, who advised Mr. Thorne that *244 he would need a total right knee replacement.
On August 16, 1992, Mr. Thorne was admitted to Tulane Medical Center Hospital by Dr. Edmunds for the purpose of undergoing this surgery. On August 17, 1992, Mr. Thorne underwent a right total knee arthro-plasty performed by Dr. Edmunds without complication. Prior to surgery, an in-dwelling Foley catheter was inserted without difficulty to monitor the patient’s urine output. Mr. Thorne’s Foley catheter was discontinued on the morning of August 18,1992.
On the afternoon of August 18, 1992, Mr. Thorne was unable to urinate and his physician ordered an in-and-out catheterization. At 4:00 p.m., this catheterization was performed without difficulty. At approximately 9:00 p.m. on the same date, Mr. Thorne was again unable to urinate and notified the nursing staff of this problem. Nurse Betty Fom-by[1] examined Mr. Thorne and found extreme bladder distension. Nurse Fomby then obtained a catheter kit and a pair of gloves and returned to Mr. Thorne’s room.
At this time, Mr. Thorne’s mother, Verla Thorne was present in the hospital room. Both Stephen Thorne and Verla Thorne testified that they observed Nurse Fomby’s fingernails, which both witnesses testified were approximately two inches long and painted with bright polish. Stephen Thorne testified that several of Nurse [tFomby’s fingernails broke through the fingertips of the gloves while she was performing the sterile procedure. He stated that Nurse Fomby then put on a second pair of gloves, and her fingernails broke through the fingertips of the second pair of gloves as well. Although Mrs. Thorne stated she did not remain in the hospital room for the entire catheterization procedure, she also observed Nurse Fomby’s fingernails break through the gloves she was wearing.
At trial, Betty Fomby testified that her nails were not two inches long as claimed by plaintiff. She further disputed plaintiffs account of the factual situation. Nurse Fomby testified that only one of her fingernails broke through on the first pair of gloves, and it did not occur during the sterile portion of the procedure. She stated that the second pair of gloves she wore during the remainder of the procedure remained intact.
Nurse Fomby attempted to catheterize Mr. Thorne, but he experienced pain in the process and she discontinued the procedure. Nurse Fomby then called in another nurse, Ellen Cassreino, who performed the cathet-erization without difficulty. Nurse Fomby remained in the room during this procedure and charted that the catheterization was performed. However, there was no notation in the chart that Nurse Fomby experienced difficulty with the procedure or that the cathet-erization was eventually performed by Nurse , Cassreino. Further, the record indicates that no incident report was prepared with regard to any violation of sterile procedure in the catheterization of Stephen Thorne.
Several days following the catheterization procedure, Mr. Thorne began to experience the “shakes,” high fever, and all-over body tenderness. A blood culture was drawn on August 23,1992, and it revealed the presence of a rare blood-stream ^infection known as serratia marcessans. Mr. Thorne was then placed on two types of antibiotics, and the infection was eventually cleared. However, the infection increased the length of Mr. Thorne’s hospital stay and caused him to suffer physical and mental pain. Mr. Thorne claims that the infection was caused by the breach in sterile procedure during the cath-eterization performed by Nurse Fomby.
Plaintiffs initially filed a request for review by a Medical Review Panel, alleging that Tulane was negligent in the placement of Stephen Thorne’s urinary catheter and that defendant failed to obtain informed consent for the catheterization. Plaintiffs alleged further that Tulane’s alleged negligence in the placement of the catheter caused Stephen Thorne to develop a serious and life-threatening infection during his hospitalization at Tulane.
*245 The Medical Review Panel rendered an opinion finding that the evidence did not support a conclusion that defendant failed to meet the applicable standard of care with regard to the issue of informed consent. However, the panel found that there was a material issue of fact as to whether the nurse who placed the urinary catheter had violated her standard of care. .
Following the rendition of this opinion, plaintiffs filed a Petition for Damages against Tulane in Civil District Court alleging medical malpractice in the placement of the urinary catheter. Stephen Thorne claimed he suffered damages in additional hospital expenses, physical and mental pain and fear for his life due to the infection. Judy Thorne, Stephen’s wife, asserted a claim for loss of consortium. Stephen Thorne further alleged the defendant was liable for overcharging him for a blood clotting product which was administered to him during his hospitalization.
(¡Prior to trial, defendant filed an Exception of No Cause and/or Right of Action on plaintiffs’ claim for price overcharging. This exception was maintained by the trial court on May 1, 1997. Plaintiffs’ claims for medical malpractice proceeded to trial by jury on May 5 - 14,1997.
Following trial, the jury returned a verdict in favor of defendant and against plaintiffs. In response to the jury interrogatories, the jury found that Nurse Fomby had not violated the appropriate standard of care in performing the catheterization procedure on Stephen Thorne. The jury therefore did not reach the issue of the causation of the infection or whether Nurse Fomby was an employee of Tulane. On June 9, 1997, the trial court entered judgment based on this verdict.
On appeal, plaintiffs present three issues for review by this Court:
1. Whether the trial court gave an erroneous jury instruction on the standard of care required in this ease.
2. Whether the trial court erred in maintaining the Exception of No Cause/No Right of Action as to plaintiffs claim relating to the price overcharging.
3.Whether the trial court erred in failing to grant plaintiffs motion for directed verdict on Betty Fomby’s status as an employee of Tulane.

Jury Instruction

Appellants first argue that it was error for the trial court to instruct the jury that the law presumes that doctors and nurses have done their duties. Appellants contend that the jury instruction constitutes reversible error and requires a de novo review by this Court. We do not agree.
The standard of appellate review of jury instructions is clearly established in Louisiana jurisprudence. In Girvan v. New Orleans Pub. Serv. Inc., 646 So.2d 481 (La.App. 4 Cir.1994), a panel of this Court stated:
bin making his charges to a jury, a trial judge is not required to give the precise instructions submitted by either party, but rather, has a duty to charge the jury as to the law applicable to a case, and to accomplish this, has the responsibility to reduce the possibility of confusing the jury. Further, appellate courts must exercise great restraint before overturning a jury verdict on the suggestion the instructions were so erroneous as to be prejudicial. The pertinent question involved in making the decision as to error is whether the jury was misled to such an extent as to prevent it from doing justice.
646 So.2d at 483. (Citations omitted.)
The discovery of an error in a jury instruction does not justify a trial de novo by an appellate court without measuring the gravity and degree of error and considering the instructions as a whole and the circumstances of the case. Barnett v. New Orleans Public Service, Inc., 489 So.2d 452 (La.App. 4th Cir.1986).
In support of their position that the jury instruction given in the present case was erroneous, appellants cite to a decision of this Court, Williams v. Golden, 699 So.2d 102 (La.App. 4 Cir.1997), in which a jury verdict rendered in a medical malpractice case was set aside based on a highly prejudicial jury instruction. The instruction to the jury in that case provided in part:
*246 Also, the law presumes that a medical practitioner possessed reasonable knowledge and skills required of him by the controlling medical standards and that in treating the patient he applied that knowledge and skill. This presumption should control your deliberations in this case unless it has been overcome by a showing that, by the greater weight of the evidence, Doctor Golden was not so possessed or did not so apply his knowledge and skills.
The Court in Williams found that the instruction was confusing as to what standard of proof plaintiff was required to meet. Further, the court found that placing the erroneous instruction toward the end of the charge supported plaintiffs contention that the instruction prejudiced the case and resulted in an adverse verdict. The Court stated that the use of the word “presumption” in the instruction was persuasive as to plaintiffs burden. The Court concluded that the jury verdict fcwas contaminated by the highly prejudicial instruction, and the verdict was therefore set aside. The Court then conducted a de novo review of the record.
Appellants contend that the conclusion reached in the Williams case is directly applicable to the jury instruction given in the present ease, as the trial judge referred to a presumption in favor of physicians and nurses. The instruction given in the present case provided in part as follows:
I charge you that the law accords physicians and nurses the presumption that they have done their duty. In absence of any evidence to the contrary in a suit for injury caused by alleged malpractice of a physician or nurse, the burden is on the plaintiff to prove by a preponderance of the evidence that doctor or nurse’s treatment fell below the standard of care.
The trial judge then went on to describe the standard of care required in this case and to reemphasize that the burden of proof for plaintiff to be successful would be to prove the elements of malpractice by a preponderance of the evidence.
The trial court in the present case did not give the same jury instruction that this Court found erroneous in the Williams case. The Court in the Williams case did not conclude that the use of the word “presumption” in and of itself constituted an erroneous instruction. Rather, the Court in Williams concluded that the jury instructions as a whole were misleading to the extent that they contaminated the jury verdict.
In Williams, the trial court first informed the jury that the medical review panel found that the evidence did not support a conclusion that the physician failed to meet the applicable standard of care and then gave an instruction that the physician was presumed to possess the required skill and knowledge and to have applied it when treating plaintiff. The Williams instruction further stated that the presumption “should control your deliberations” unless it is overcome by “greater weight of evidence.” Furthermore, the Williams court noted that the placement of bthis confusing instruction toward the end of the charge supported plaintiffs contention that the instruction had prejudiced the jury.
In the present case, however, the judge did not impermissibly comment on the evidence as presented to the medical review panel; rather, the trial court stated that the medical review panel decision was not binding on the jury’s decision in the case. In fact, in this case, the medical review panel found an issue of fact which should be resolved by a jury, and the jury could not have felt bound or constrained by the MRP opinion.
Furthermore, the trial court in the present case never instructed the jury that the presumption in favor of physicians and nurses should “control your deliberations” as stated in the Williams case. The jury instructions in the present ease were over fifteen pages long, and were accurate and clear. The standard of proof instructions were consistent with those set forth in La. R.S. 9:2794C and were clearly stated to the jury. The use of the word “presumption” in the middle of the instructions did not confuse or mislead the jury in its application of the burden of proof. The Williams case is therefore distinguishable from the facts of the present case.
We have carefully reviewed the entirety of the jury instructions in this case. We fail to find that the instructions were confusing, nor do we not find that the jury was misled by *247 the instructions. The jury instructions correctly stated the plaintiffs’ burden of proof in this case. We therefore reject appellants’ argument that the jury verdict must be set aside.
Further, we find no manifest error in the verdict of the jury which finds that Nurse Fomby did not breach the applicable standard of care. The issue of whether Nurse Betty Fomby breached the standard of care is a factual determination which is subject to the manifest error standard. The testimony with regard to the catheterization process was conflicting. Further, the expert testimony offered with ^regard to the applicable standard of care was also conflicting depending on the version of facts presented.
The jury apparently chose to believe Nurse Fomby’s testimony that her fingernails did not break through the gloves during the sterile portion of the catheterization procedure. We have reviewed the record in this ease and we find that this conclusion is reasonable. Further, the expert testimony supports the jury’s finding that Nurse Fomby did not breach the standard of care in her treatment of Stephen Thorne.
While the evidence in the record indicates that a breach of the standard of care would have occurred based on Stephen Thorne’s account of the factual situation, the jury apparently chose not to credit the testimony of plaintiff that Nurse Fomby breached the sterile technique during the procedure. We have carefully reviewed the testimony of plaintiff and his witnesses, and we find that the jury’s evaluations of credibility are reasonable.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. When there is evidence before the trier of fact, which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). Our review of the record in this case reveals no manifest error in the jury’s factual determinations, and we will therefore not disturb the jury’s verdict.

Exception of No Cause of Action

Appellant next argues that the trial court erred in granting defendant’s exception of no cause and/or no right of action to plaintiffs claim of price overcharging. The function of an exception of no cause of action is to test the legal Insufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels v. Subaru South, 616 So.2d 1234, 1235 (La.1993).
The relevant paragraphs of plaintiffs petition state:
X.
Stephen L. Thorne is a hemophiliac.
XI.
Because of his prolonged hospital stay, it was necessary for him to receive large amounts of Factor VIII at Tulane University Medical Center Hospital. Factor VIII is a clotting drug which hemophiliacs must use on a regular basis.
XII.
Stephen L. Thorne normally administered Factor VIII to himself at home. The cost per unit charged to him by Tulane University Medical Center was approximately 400 to 500% more than the cost per unit for home administration of the Factor VIII.
XIII.
Because he had to stay in the hospital for such a long time and because Tulane University Medical Center overcharged Stephen L. Thorne for the Factor VIII, his lifetime insurance cap was diminished by approximately $200,000 because of the Factor VIII overcharges.
Plaintiffs petition does not state a cause of action for overcharges. Plaintiff does not allege that he was billed by Tulane for more *248 than Tulane’s established price for this Factor. Nor does plaintiff allege that he was charged for a product which was not administered to him. The allegation that the price charged by faTulane Was higher than the price established for home administration of the Factor VIII is insufficient to state a cause of action against Tulane for overcharging.
Further, the record in this case indicates that Mr. Thorne’s insurer reviewed the charges of Tulane for the Factor VIII administered during Mr. Thorne’s hospital stay and paid for these charges. Mr. Thorne’s recourse for any alleged overpayments is therefore with his insurance company, and he has no cause and/or right of action against Tulane for this claim.
Under the circumstances presented here, we find no error of the trial court in granting defendant’s exception of no cause and/or right of action and dismissing plaintiffs claim against Tulane for price overcharging.

Nurse Fomby’s Employment Status

Lastly, appellants assign as error the trial court’s denial of a directed verdict on the employment status of Nurse Betty Fomby. However, based on our decision herein regarding the propriety of the jury verdict which finds that Nurse Fomby did not breach the standard of care, we find it unnecessary to reach the issue of her employment status.

CONCLUSION

Accordingly, for the reasons assigned herein, the judgment of the trial court granting Tulane exception of No Cause and/or Right of Action is affirmed. Further, the trial court’s judgment dated June 9, 1997 adopting the verdict of the jury and dismissing plaintiffs’ claims against defendant is also affirmed. Each party is to bear its own costs of this appeal.

AFFIRMED.

. At all pertinent times herein, Nurse Betty Fom-by was an independent contractor who was assigned by Excel Medical Staffing to perform nursing duties at Tulane Medical Center. The parties dispute whether Nurse Fomby is considered to be an employee of Tulane.