WICKER, Judge.
Kevin McAuliffe, the plaintiff, and Northwestern National Insurance Group, intervenor, appeal a judgment absolving the owner, driver, and insurer of the automobile which caused McAuliffe’s injuries of any liability for those injuries. We affirm.
McAuliffe was a passenger on a forklift[1] owned by his employer, Cargill, Inc., and driven by Pete Porrette, Jr., a fellow employee. On March 30, 1983, at 7:40 P.M. the forklift pulled onto Highway 44 near Reserve, Louisiana. The forklift had only a yellow light on its top. It had no headlights or taillights, and its reflectors were covered with mud. It was travelling about eight miles per hour.
Johnette Lyons was driving west along Highway 44 in an automobile owned by Benny Cashio, Sr. When suddenly confronted with the looming forklift, Lyons veered to the left to avoid a collision. Unfortunately, at the same time Lyons veered to the left, McAuliffe, fearing an imminent collision, jumped off the forklift into Lyons’ path, where he was struck and seriously injured.
McAuliffe sued Lyons, Cashio, State Farm Mutual Automobile Insurance Company (Cashio’s liability insurer), and Sentry Insurance Company (his uninsured motorist carrier).[2] Sentry third-partied Cashio, Lyons, State Farm, and Porrette. Northwestern National Insurance Group (Car-gill’s workman’s compensation carrier) intervened for its medical and compensation payments to McAuliffe. McAuliffe supplemented his petition to add Aetna Casualty & Surety Company (Lyons’ liability insurer).
Following a two-day judge trial, McAu-liffe’s claims against all defendants were dismissed. The trial judge found that the sole cause of the accident was the inadequate lighting on the forklift, that the presence of the forklift on the highway was an unusual and unexpected obstruction, that Lyons did not fail to keep a proper lookout or see what she should have, and that Lyons was faced with a sudden emergency to which she responded reasonably.
Northwestern and McAuliffe formulate three issues for review:
(1) whether a driver travelling in excess of or near the speed limit on a dimly-lit, wet section of the highway is comparatively negligent when she strikes a passenger forced to jump off a slow-moving, preceding vehicle because it appears the driver will collide with the preceding vehicle;
(2) whether a drawing made from official records should be admitted into evidence when the custodian of the original records is available in court to testify concerning the accuracy of the records; and
(3) whether a witness who was not identified in pre-trial interrogatories or orders should have been allowed to testify over McAuliffe’s objections.
The forklift pulled onto a favored roadway from a side road or driveway, it had only a revolving yellow light on its top, it was travelling at a maximum speed of eight to ten miles per hour, and McAuliffe jumped off to avoid what he thought was an imminent collision. No one disputes *1030 these facts. However, other facts are disputed.
Officer Robert Pizzuto of the Louisiana State Police, the investigating officer, testified that the speed limit was 45 miles per hour. Maurice Jordan, a Department of Transportation maintenance engineer, and McAuliffe testified that the speed limit was 35 miles per hour.[3] Al Dupas, another passenger on the forklift, testified that he did not know what the speed limit was. The trial judge expressed his intention to personally check the speed limit in the area of the accident.
Lyons testified she was travelling between 35 and 45 miles per hour. Pizzuto testified that there was no evidence that Lyons had been travelling in excess of the speed limit, while McAuliffe testified he thought Lyons was exceeding 35 miles per hour.
Pizzuto testified that the street lights were dim and far-spaced. McAuliffe testified that Cargill’s lights illuminated the area. Lyons couldn’t remember whether the street lights were lit, but she did say that the lights coming from Duke’s Bar were not bright but the lights in Cargill’s parking area were bright. Dupas testified that two light poles and the light at Duke’s Bar two blocks down were on and the night itself was clear and bright. Lyons’ daughter, Leila, twelve years old at the time of the accident, didn’t remember whether or not the lights on the poles were burning and thinks Duke’s Bar was closed and unlit. Leila also testified that it was too dark to see anyone on the forklift.
The accident report indicated that the roadway was wet. McAuliffe testified that the earlier wetness had been dried by the heat. Lyons didn’t know if the highway was wet or not.
McAuliffe testified the forklift pulled onto the highway after having waited for other vehicles to pass but that he saw one car coming from about eight blocks away. He also testified that the road in the area was straight. Dupas testified that he saw no oncoming lights when they pulled out and that he first saw the car when it pulled out of a big curve four or five blocks away from the collision.
Pizzuto testified that when he arrived at the scene the yellow, revolving light atop the forklift was not operating, even though the forklift was still running. McAuliffe testified that the yellow light came on automatically when the key was turned on and that the light was on both before and after the accident. Lyons testified that the yellow light was not flashing before the accident but it was afterward. Dupas testified the yellow light was on the whole time they were moving. Leila testified that she saw no blinking lights on the roadway.
Pizzuto testified the reflectors on the rear of the forklift were covered with dust or mud, but McAuliffe testified that the forklift was washed every day.
McAuliffe failed to carry the burden of proving Lyons’ negligence by a preponderance of the evidence. The trial judge had the opportunity to observe the witnesses and resolve any conflicts in the testimony. We will not disturb his findings as we see no manifest error in them. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. The reason for this well-settled principle of review is based not only on the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record) but also upon the proper allocation of trial and appellate functions between the respective courts.
Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).
The Highway Regulatory Act requires that vehicles travelling at night “display *1031 lighted lamps and illuminating devices” consisting of “at least two headlamps” emitting “a white light only” and “at least two tail lamps.” L.S.A.-R.S. 32:301, 303, 304. The forklift in question was in obvious violation of these safety statutes; and there was no error in the trial judge’s conclusion that this was the cause in fact of the accident. Had the forklift been properly lighted, it is reasonable to believe Lyons would have seen its taillights from a sufficient distance to enable her to slow down in time to avoid this unfortunate accident. Under these facts, the slow-moving, unlighted forklift confronting Lyons and McAuliffe’s presence in the middle of the roadway created a sudden emergency to which she responded in a reasonable way.
We find no abuse of the trial court’s discretion in permitting Leila Lyons to testify, even though she had not been previously listed as a defense witness. The judge has the power “to control the proceedings at the trial, so that justice is done.” L.S.A.-C.C.P. art. 1631. Nor do we find any abuse of that same discretion in the court’s exclusion of a drawing prepared for trial and allegedly showing the speed limits at various places in the area surrounding the accident site. This drawing adds nothing to the testimony on the issue.
McAuliffe and Northwestern are to pay the costs of this appeal.
AFFIRMED

. The vehicle in question was also referred to in testimony as a front-end loader.

. Sentry settled with McAuliffe and was dismissed with prejudice before trial.

. McAuliffe testified he personally checked it out two months after the accident. Jordan couldn't state with certainty that the 35 mile-per-hour speed limit was posted at the time of the accident. Jordan also testified the limit was higher immediately before and after this 1.2 mile stretch of road.