664 So.2d 1303 (1995)
REGIONAL TRANSIT AUTHORITY
v.
Donald LEMOINE and State Farm Insurance Company.
Donald LEMOINE
v.
Johnnie WARNER and Regional Transit Authority.
Nos. 93-CA-1896, 93-CA-1897.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1995.
Rehearing Denied January 17, 1996.
*1304 Law Offices of Tonry & Ginart, Michael C. Ginart, Jr., Chalmette, for Appellant, Lemoine.
Berrigan, Litchfield, Schonekas, Mann & Clement, Charles F. Wartelle, New Orleans, for Appellees, RTA and Warner.
Before BARRY, BYRNES, and LANDRIEU, JJ.
BARRY, Judge.
Donald Lemoine's truck struck the rear of a Regional Transit Authority bus which was stopped partially in Lemoine's travel lane. RTA sued Lemoine and State Farm Insurance Company, his insurer, for damages. State Farm reconvened against the RTA bus driver, Johnnie Warner, for stopping illegally on a street and against RTA for improper supervision and instruction of Warner. In a separate suit Lemoine sued Warner, RTA, Transit Management of Southeast Louisiana, Inc. (TMSLI), Warner's employer, and Progressive Casualty Insurance Company, TMSLI's insurer. Lemoine alleged that the bus was halfway parked in a traffic lane without emergency lights during a rainstorm and he could not see the bus before the collision. RTA and Warner reconvened against Lemoine and third-partied State Farm. The cases were consolidated and the appeals have been consolidated.
After a bifurcated trial the jury concluded that Warner and TMSLI were not at fault. The trial judge ruled that RTA was not at fault. Judgment was rendered against Lemoine and State Farm and their claims were dismissed. RTA's settlement with State Farm was acknowledged.
Lemoine's appeal asserts:
1) the jury instruction to disregard the opinion testimony of a fact witness was erroneous;
2) it was improper to allow Kennedy Johnson to testify because Johnson's current address was not listed in a supplemental answer to an interrogatory;
3) the trial court should have instructed the jury as to the application of 828 M.C.S. § 38-242.01;
4) the trial court and the jury erred by not finding the bus driver, his employer and RTA at fault.

TESTIMONY
It was stipulated that Johnnie Warner was in the course and scope of his work as a bus *1305 driver employed by TMSLI at the time of the accident and the bus was owned by RTA. Outside of the jury's presence it was stipulated that State Farm settled with RTA for $2,270.03 for damages to the bus plus interest and paid Lemoine $8,660.75 under his collision coverage for damage to his truck.[1] The jury interrogatories did not cover property damage and the jury was told only the stipulated amount of damage to the truck and the bus.
Donald Lemoine, an electrician, testified that October 13, 1989 was a payday and he stopped and consumed more than three beers before 6:00 p.m. when he picked up his son, Nicky. He was driving a Chevy S-10 and it was raining and getting dark. His dim lights and windshield wipers were on. Lemoine turned into the left lane of northbound traffic on General Meyer Ave. (a four lane-two way street) and was traveling at 30-35 m.p.h.. The car in front of him was traveling at 20-25 m.p.h. and caused a spray which obstructed his vision. He moved into the right lane to pass the car. Nicky hollered "Daddy" and Lemoine turned to look at his son. Thereafter, all Lemoine remembered was waking up in the hospital. He did not see the warning lights of the stopped bus or the construction barriers farther down General Meyer.
Nicky Lemoine (11 years old at the time of the accident) testified by videotaped deposition that it was raining and dark as his father changed from the left to the right lane. Nicky looked up, saw something black, and screamed. His father's truck hit the bus. Nicky did not notice prior to the accident whether the bus had lights and said: "[I]f the lights were on, we would have never hit it, because we would have seen it." Nicky testified that the bus was "kind of in the road and kind of not," but it was "mainly in the road." The bus driver returned to the bus and turned on the lights. Nicky also did not see the warning lights for the construction project which he knew was about two blocks ahead.
Johnnie Warner, an RTA bus driver for four years, testified that he relieved another driver on the outbound route and started the inbound route about 7:35 p.m. The bus lights were on. There were two passengers on the bus when he stopped at about 7:40 p.m. on General Meyer near the corner of Roselyn Park Place to use the comfort station on that route, a Chevron Service Station across the street. He pulled the bus off the roadway as far as possible without bogging down because of a down slope to a drainage ditch. Warner put on the hand brake, placed the bus in neutral, and turned on the hazard lights. According to Warner, the bus was eight or nine inches in the right lane of traffic. Warner stated that the pictures at trial (dated January 19, 1993) showed the shoulder of the road after it had been upgraded, not as it looked on the night of the accident. He explained that he could not drive across the double yellow lines to go over to the service station. He could not park farther down the street because of time constraints. He was away from the bus three to four minutes. Warner testified that he left the bus running pursuant to instructions in pamphlets or drivers' alerts circulated daily with more current information than the manual (which stated that the bus should have been shut down). Warner walked across General Meyer to the restroom. While he was in the bathroom, he heard a crash. He went outside and saw a truck that had crashed into the bus' left rear bumper.
Theresa Savoie, who lived on the corner of General Meyer and Roselyn Park Place, testified that she and her grandson went outside after the crash and saw that a truck hit a bus which was partly in the right lane of General Meyer. She said that the RTA bus had no lights until the driver returned; however, on cross-examination she did not know whether lights were on inside the bus. Ms. Savoie said that one-fourth or more of the bus was in the street. She had seen buses stopping there because the drivers used the Chevron *1306 restroom. She said that some drivers pulled off the street completely and used flashers and some did not. Ms. Savoie stated that buses continue to park there because of the comfort station. She has complained to the RTA about the practice to no avail. Ms. Savoie said that there were construction barricades extending into a lane of traffic during the resurfacing of Huntley Dr. (the next cross street and traffic light) at the time of the accident. Ms. Savoie noted that General Meyer was re-surfaced in 1990 or 1991 after the accident.
Mrs. Gloria Lemoine, Donald Lemoine's girlfriend at the time of the accident and wife at the time of trial, testified that Nicky called her immediately after the accident from a nearby house. She went to the scene and did not see lights on the bus. She said that one-third of the bus was on the street. After Lemoine left in the ambulance, she saw red lights flashing on the back of the bus.
Kennedy Johnson, a bus passenger, stated that he was on the bus when the accident happened. The driver drove the bus onto the shoulder and left for about five minutes. The engine was running and the lights were on when the bus was struck. He saw the emergency lights flashing. Johnson also saw flashing lights ahead because of the construction work about 1½ blocks away. Johnson said that there was enough room for the S-10 truck to pass the bus which extended 13 or 14 inches into the right lane of traffic.
Julius Sasso was driving in the right lane on General Meyer and testified that he saw the accident. Sasso was traveling 25-30 m.p.h. (the speed limit was 35 m.p.h.) and Lemoine passed him in the left lane. Lemoine moved back into the right lane to go around a slower moving vehicle in the left lane when he struck the bus. Sasso watched Lemoine accelerate, hit the brakes, and skid into the bus. Sasso stopped to help. He stated that the bus was in the right lane and a vehicle had to move into the left lane to pass the bus and the construction work. From two to three blocks away Sasso could see the bus' lights as well as the construction barricades located in the right lane.
Officer Paul Schubert, accident reconstruction expert, testified that he reviewed the police accident report, went to the scene at the end of July, 1992, took measurements, obtained manufacturers' dimensions on the bus and the truck, and observed RTA buses pull onto the shoulder at the accident location. He was not aware that General Meyer had been re-surfaced. Officer Schubert referenced RTA's photo exhibits of the accident scene taken on January 19, 1993. Based on his measurements the right northbound lane of General Meyer was nine feet, nine inches wide, the left lane was nine feet, ten inches wide, and the shoulder was seven feet, seven inches wide. Lemoine's Chevy S-10 truck was five feet, two inches wide and the RTA bus was eight feet, six inches wide. Therefore, there was a slightly over eight feet open in the right street lane if Lemoine drove to the edge of the shoulder. Officer Schubert concluded that Lemoine's truck had sufficient room to pass the bus in the right lane.
Dr. Culicchia, Lemoine's neurosurgeon, testified that he was called by an emergency room physician at JoEllen Smith Hospital where Lemoine was brought from the accident scene. He had Lemoine transferred to Meadowcrest Hospital where Lemoine was admitted at 3:45 a.m. on July 14, 1989. Lemoine was combative and had a .12 blood alcohol level. Dr. Culicchia stated that Lemoine had a drinking problem. On February 25, 1990 he fell in his bathroom, hit his head and was rushed to the hospital. At that time he had a .362 blood alcohol level, an amount which most people could not survive.

A/E No. 1OPINION TESTIMONY
Lemoine argues that the trial court erred by instructing the jury not accept the lay opinion of Ms. Savoie. Ms. Savoie testified that she saw buses stop at the accident location all the time. She stated:
Some bus drivers pull completely off the shoulder. Some bus drivers don't. They stay in the street. I know that because I used to work in my yard all the time. I have seen this happen many, many times *1307 that the buses do not pull off in a safe zone.
RTA objected and was overruled. The court stated: "A witness is allowed to express a witness' statement." The trial court further explained to the jury:
Ladies and gentlemen, let me clarify something for you. I previously indicated to you what an expert witness is. This is a fact witness. A fact witness may not state an opinion, so any opinion that a fact witness testifies to is not admissible evidence and you should disregard opinions given by fact witnesses, whether it be Miss Savoie or any other fact witness.
Ms. Savoie testified that some drivers put on emergency flashers when they stopped and some did not. Later she stated: "It aggravates me that the bus drivers are so negligent in the safety of other people that they do not pull off the road...."
Ms. Savoie's opinion testimony does not clearly fall under La.C.E. art. 701 which allows the limited testimony of a lay witness as to an opinion or inference that is rationally based on the witness' perception and helpful to an understanding of his testimony or the determination of a fact at issue. The trial court is vested with broad discretion in the administration of the article. Comments (b) to C.E. art. 701. Young v. Armadores de Cabotaje, S.A., 617 So.2d 517 (La.App. 4th Cir.1993), writs denied, 625 So.2d 170 and 171, cert. denied, ___ U.S. ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994), cited by Lemoine, is not on point. In Young longshoremen were allowed to testify as to the safety of the stow (the determinative factual issue) based on their experience.
Regardless, the trial court overruled RTA's objection to Ms. Savoie's testimony. The court did not curtail Lemoine's questioning of Ms. Savoie, who testified about her observations and opinions about negligent bus drivers not pulling completely off the road. She expressed aggravation at the drivers' "negligence" as to the safety of others (without any objection).
There was no abuse of the trial court's discretion and this assignment has no merit.

A/E NO. 2JOHNSON'S TESTIMONY
Lemoine argues that Kennedy Johnson, a passenger on the bus, should not have been allowed to testify because his current address was not provided in a supplemental answer to an interrogatory as required by La.C.C.P. art. 1428. The trial court is vested with much discretion to control trial proceedings. La.C.C.P. art. 1631. See Bush v. Winn-Dixie of Louisiana, Inc., 573 So.2d 508 (La.App. 4th Cir.1990), writ denied, 578 So.2d 930 (La.1991); McAuliffe v. Cashio, 508 So.2d 1028 (La.App. 5th Cir.1987). Only upon a showing of an abuse of that discretion should an appellate court intervene. Simoneaux v. Humedicenters, Inc., 93-2044 (La. App. 4 Cir. 8/30/94); 642 So.2d 318.
When the defendants (RTA, TMSLI, and Warner) called Johnson as a rebuttal witness on the second day of trial, Lemoine objected partially on the basis that the defendants did not provide Johnson's current address for deposition purposes. Lemoine argued that the defendants obtained Johnson's correct address subsequent to providing his last known address (wrong address) in response to an interrogatory. The defendants conceded that they had Johnson's address several months before trial, but did not intend to call him as a witness until Nicky Lemoine stated in his deposition testimony on June 2, 1993 that the bus lights were not on. The case was called for trial June 2, 1993, all counsel stated that they were ready to proceed, and the matter was held open until June 15, 1993 for jury selection. Johnson was called to testify on June 16, 1993.
The trial court noted that Johnson had been timely disclosed as a witness and Lemoine was put on notice on the first day of trial when the court read the list of witnesses. Counsel had the opportunity to depose Johnson overnight. The trial court declared that it would hear Johnson's testimony and entertain motions for a new trial or a judgment notwithstanding the verdict if the testimony caused injustice. No motions were filed.
*1308 Johnson was timely disclosed as a witness, his last known address provided, and he was named on the first day of trial. We find no abuse of the trial court's discretion. This assignment has no merit.

A/E No. 3JURY INSTRUCTION
Lemoine assigns as error the trial court's refusal to instruct the jury pursuant to 828 M.C.S. § 38-242.01 and its conclusion that La.R.S. 32:296 gave the bus driver the right to stop the bus under facts of this case. The court's conclusions would fall more properly under Lemoine's fourth assignment of error. In brief Lemoine states that the jury instructions were not transcribed and he is "unable to show what the court did instruct the jury." Lemoine contends that the trial court's transcribed comments before and after the jury charge show that the instructions pursuant to 828 M.C.S. § 38-2402.01 were not given. Therefore, our review is limited to whether an instruction relating to the ordinance should have been added to the jury charge.
Lemoine contends that the jury was improperly charged, the verdict should be reversed, and this Court should make a de novo determination under Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). We note that an erroneous jury instruction would only affect the jury verdict as to TMSLI and Warner and not the trial court's decision as to RTA.
A jury instruction as a whole must reflect the applicable law in light of the pleadings and facts of the case. Girvan v. New Orleans Public Service, Inc., 94-0681 (La.App. 4 Cir. 11/30/94), 646 So.2d 481, writ denied, 94-3169 (La. 3/10/95), 650 So.2d 1178. The adequacy of the instruction is determined in light of the instructions as a whole. Sons v. Delaune, 634 So.2d 1212 (La.App. 1st Cir.1993), writ denied, 94-0729 (La. 5/6/94); 637 So.2d 1050. The discovery of an error in a jury instruction does not justify a trial de novo without measuring the gravity and degree of the error and considering the instructions as a whole and the circumstances of the case. Kennedy v. St. Charles General Hospital Auxiliary, 630 So.2d 888 (La.App. 4th Cir.1993), writ denied, 94-0269 (La. 3/18/94); 634 So.2d 863. When deciding whether an error in the jury instruction constitutes reversible error, an appellate court must consider if the erroneous instruction probably contributed to the jury verdict. Kibble v. B.P.O. Elks Lodge # 30, 640 So.2d 267 (La. App. 4th Cir.1993), writ denied, 94-0922 (La. 5/20/94); 641 So.2d 204.
According to the transcript Lemoine requested a jury instruction relating to M.C.S. § 38-242.01 which provides (according to the proffered copy):
It shall be unlawful to park any truck tractor, semitrailer, bus, school bus or freight-carrying vehicle in the following areas unless actively engaged in loading or unloading:
(a) In an RD, RM or RS Residential District as defined by the Comprehensive Zoning Ordinance of the City of New Orleans.
Lemoine also proffered a zoning map which showed the accident location is zoned RS2.
The trial court determined that the quoted section related to overnight parking or parking a "semi-truck" or "big bus" during the day in a residential neighborhood, but not whether a bus could stop briefly. The court concluded that the governing ordinances and laws were set forth in the jury charge and did not add the additional charge relating to § 38-242.01.
After the jury instructions were given, Lemoine again requested that the ordinance be given, but the court stood by its previous reasons. The court noted that § 38-242.01 related to a parked vehicle. The court declared that reading § 38-242 (the preceding section which prohibited parking a vehicle on a street for longer than twenty-four hours) with § 38-242.01 showed that the section did not apply under these facts.
828 M.C.S. § 38-242.01 is not on point because the RTA bus was not parked, but had stopped briefly on a shoulder for the *1309 driver to use the restroom. The trial court did not err by refusing to give the additional instruction. This assignment has no merit.

A/E No. 4MANIFEST ERROR
Lemoine argues that the court and the jury manifestly erred by finding that RTA, TMSLI, and Warner were not negligent. He contends that the exceptions of La.R.S. 32:296, which gives the RTA bus the right to stop on the shoulder according to the trial court, do not apply. La.R.S. 32:296 provides:
No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder when such stopping or parking on the highway shoulder shall obstruct the flow of traffic or is a hazard to public safety, unless such stopping, parking, or standing is made necessary by an emergency, except:
(1) In those areas designated as parking areas by the Department of Transportation and Development, or
(2) By any public utility personnel or public utility equipment engaged in the operation of the utility business, public vehicles owned by public bodies which are engaged in the conduct of official business, or privately-owned vehicles which are engaged in services authorized by the local governing authority.
Lemoine argues that leaving an unattended vehicle partially in a travel lane violates La.R.S. 32:141A, which provides that "outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway...." Lemoine submits that Warner was negligent per se and should be found at fault.
However, a violation of a statute, which constitutes negligence per se, is actionable only when it is shown that the violation was the legal cause of the accident. Poland v. Glenn, 623 So.2d 227 (La.App. 2d Cir. 1993), writ denied, 629 So.2d 1171 (La.1993). Negligent conduct is a cause-in-fact if it is considered a substantial factor in bringing about the harm. Armand v. Louisiana Power & Light Co., 482 So.2d 802 (La.App. 4th Cir.1986), writ denied, 484 So.2d 669 (La. 1986). To prove liability under a duty-risk analysis, the plaintiff must establish that the defendant's conduct was the cause-in-fact of the resulting harm, that the defendant owed a duty to the plaintiff which was breached and the risk of harm was within the scope of protection afforded by the duty breached. Campbell v. Louisiana Department of Transportation and Development, 94-1052 (La. 1/17/95); 648 So.2d 898.
Here the triers of fact concluded that Warner's conduct (assuming arguendo it constituted a statutory violation) was not the cause of the accident. Lemoine's admitted intoxication and actions, which violated his duty to use reasonable care in the operation of his vehicle, Campbell, 648 So.2d at 898, and his duty to exercise greater care when changing lanes, Averna v. Industrial Fabrication and Marine Service, Inc., 562 So.2d 1157 (La.App. 4th Cir.1990), caused the collision.
According to its reasons for judgment the trial court believed the testimony of Sasso, Johnson and Warner that the flashers of the bus were turned on. The court accepted the testimony of Warner, Savoie and Johnson that the bus was partially blocking the right lane of traffic (not less than 9 nor more than 25 inches). The court considered the weather, the time of day, the lack of daylight, and the partial blocking of the roadway. The court decided that the bus did not create an unreasonable risk of harm to motorists on General Meyer and was not the proximate cause of the accident.
The court noted that Lemoine was intoxicated at the time of the accident and more probably than not his intoxication was severe. Lemoine admitted that he drank more than three beers before getting into his truck to pick up his son. Dr. Culicchia stated that Lemoine had a drinking problem and his blood alcohol level was .12. The court noted that the intoxication was a major cause of the accident. Lemoine did not have his bright lights on, changed lanes without observing if the lane was clear, attempted to pass a car in the rain, and was exceeding a reasonable rate *1310 of speed under the circumstances. The court concluded that Lemoine's actions constituted the cause-in-fact and proximate cause of the accident (the risk of harm was within the scope of the protection afforded by Lemoine's duty which was breached) and apportioned all the fault to Lemoine.
The jury found that Warner (and therefore TMSLI) was not negligent. Implicit in that finding was a conclusion that Lemoine caused the accident and was completely at fault.
Deference is owed to the factfinder, but appellate courts have a constitutional duty to review facts. "[T]he reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous." Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La. 7/5/94), 639 So.2d 216, 221. Although this Court may have decided differently, we find no manifest error.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] The stipulation at the beginning of trial outside of the jury's presence listed the amount of damage to the truck to be $8,660.75. The trial court told the jury that the stipulated amount of damage to the truck was $8,860.75.